CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICKIE LEE HILL, Plaintiff, | ) | Civil Action No. 7:24-cv-00543 |
| v. | ) | |
| J. HAIRSTON, Defendant. | ) | By: Elizabeth K. Dillon Chief United States District Judge |

**MEMORANDUM OPINION**

*Pro se* plaintiff Rickie Lee Hill, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against two defendants, H. Abbott and R. Hairston. (Compl., Dkt. No. 1.) On September 29, 2025, the court dismissed Hill's claims against Abbott, and in the same order, denied a motion for summary judgment filed by Hill. (Dkt. Nos. 35, 36.) In his remaining claims, Hill alleges that Hairston threatened and sexually harassed him during an incident at Green Rock Correctional Center.

Hairston moves for summary judgment (Dkt. No. 45) contending that Hill failed to exhaust his administrative remedies. Hill was granted an extension of time to respond to Hairston's motion for summary judgment (Dkt. No. 52) but ultimately did not respond to the motion. Hill has, however, filed four motions for injunctive relief. (Dkt. Nos. 49, 51, 55, 60.) Hairston responded to these motions. (*See* Dkt. Nos. 53, 57, 61.) Hill filed a reply in support of all but the last of these motions. (Dkt. No. 58.)

For the reasons stated below, Hairston's motion for summary judgment will be granted, Hill's motions for preliminary injunctive relief will be denied, and the court will enter an order dismissing this case in its entirety.

## I. BACKGROUND

In his verified complaint (Dkt. No. 1 at 7), Hill alleges claims for retaliation and discrimination based on events that occurred when he was an inmate at Green Rock Correctional Center (GRCC). He alleges that on or about June 22, 2024, Hairston came to Hill's cell in the morning in Restorative Housing (RHU). (Compl. 5.) Hairston told Hill, "So I here [sic] you got a big dick?" Hairston then propositioned Hill and told him he could get him more food and other benefits. Hairston also threatened Hill with starvation and stated that he would expose family photographs and addresses. Hill claims that this has caused mental anguish, nightmares, and post-traumatic stress syndrome.

Hill's exhibits show that co-defendant Abbott received Hill's complaint on July 17, 2024, which she described as noting that "CO Hairston forced him to show him his penis" (Dkt. No. 1-1 at 1) and that Hill was charged with a disciplinary offense (Dkt. NO. 1-1 at 3). Hill also attaches a regular grievance form, dated August 5, 2024, with the annotation "MY COPY." (Dkt. No. 1-1 at 6.)

Hill requests $50,000 in compensatory and punitive damages each from Abbott and Hairston. (Compl. 6.) Hill also asks for other types of relief, such as single cell status, a payroll check without having a job, and quarterly food and clothing packages.

Defendant Hairston moves for summary judgment on the ground that Hill has not exhausted his administrative remedies and submits an affidavit provided by G. Ballard, the Operations Manager at Green Rock, outlining the grievance procedure process. (Dkt. No. 46-1.)

Hill also filed four motions requesting injunctive relief.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

### B. Exhaustion of Administrative Remedies

Defendant Hairston asserts that he is entitled to summary judgment because Hill failed to exhaust his administrative remedies as required by The Prison Litigation Reform Act (PLRA). The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The PLRA's exhaustion requirement applies to all

inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The Virginia Department of Corrections (VDOC) Operating Procedure 866.1, *Offender Grievance Procedure*, provides the mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. (Ballard Aff. ¶ 4.) Regular Grievances must be submitted within 30 calendar days of the date of the incident. Prior to submitting a Regular Grievance, the inmate must demonstrate that he has made an effort to informally resolve the complaint. This can be done by submitting a Written Complaint form to the Grievance Department at the relevant institution, which is then forwarded to the appropriate Department Head. (*Id.* ¶ 6.) After a Regular Grievance is accepted during the intake process, there are two levels of review available for Regular Grievances. Level I reviews are conducted by the Warden or Superintendent at the facility where the inmate is located. Level II reviews are conducted by the Regional Administrator, Health Services Director, or Chief of Operations for Classification and Records. (*Id.* ¶ 9.) Offenders are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. (*Id.* ¶ 11.)

On July 17, 2024, a Written Complaint was received from Hill (GROC-24-WRI-01410) in which he complained that Hairston violated the Prison Rape Elimination Act (PREA) by making a comment about showing his genitalia in exchange for not having his JPAY taken. Lt. Horsely responded on July 23, 2024, writing that a PREA investigation was conducted on July 2,

2024, notifying Hill of the results. As shown by Hill's exhibit, Abbott also acknowledged receipt of the complaint. (Dkt. No. 1-1at 1.) While Hill attached what purports to be his copy of a regular grievance (Dkt. No. 1-1 at 6), a Regular Grievance regarding this claim was never received by the Grievance Department (Ballard Aff. ¶ 13.) Moreover, Hill took no further action regarding the same.

While Hill's complaint alleges that he pursued a PREA complaint, this process is separate from the PLRA-required exhaustion procedures in VDOC. "OP 866.1 does not provide for inmates to substitute a PREA telephone report in place of an informal complaint or a regular grievance." *Cooper v. Barksdale*, No. 7:15cv522, 2016 WL 5231827, at *6 (W.D. Va. Sept. 20, 2016); *see also Barringer v. Stanley*, No. 5:16-cv-17-FDW, 2017 WL 1028595, at *3 (W.D.N.C. Mar. 16, 2017) (collecting cases holding that "PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement of the PLRA"). To the extent that plaintiff's PREA complaint could be construed as a complaint under OP 866.1, he failed to follow through with a regular grievance, or steps thereafter, as required by the procedure.

Ultimately, Hill has failed to create any issue of fact on whether he exhausted his administrative remedies or whether such remedies were unavailable to him. In fact, Hill's verified complaint demonstrates the opposite when he alleges, under the grievance section of the form complaint, that "I just got the response back, or better yet the Written Complaint Receipt back." (Compl. 2.) Thus, Hill explicitly alleges that he filed this lawsuit prior to exhausting his administrative remedies.

For these reasons, Hairston is entitled to summary judgment.

**C. Hill's Motions for Injunctive Relief**

Hill has filed four motions seeking preliminary injunctive relief. (Dkt. Nos. 49, 51, 55, 60.) A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The judiciary grants "wide-ranging deference" to prison administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

The first motion was filed when Hill was being detained at Wallens Ridge State Prison. (Dkt. No. 49.) Hill states that he is being forced to be a "cell sex slave" because the cells are filled with "micro-cameras where everyone watches me on their wifi players/t.v.." (*Id.*) Hill requests a transfer to a facility in North Carolina. In the second motion, Hill complains that staff are taking personal property "off of my card" and making copies of legal paperwork to give to gang members. (Dkt. No. 51.) Hill attached a grievance receipt which states "the announcer constantly attempted to make me stand at the door to clear him to take property off of my property card so he can give it to inmates who shows him their penis via video micro cameras in all cells at WRSP." (Dkt. No. 51-1.) Hill again requests a transfer to North Carolina.

In the third motion, Hill indicates he has been transferred to River North Correctional Center. (Dkt. No. 55.) He claims that WRSP staff announced him to be a sex offender and snitch when arriving at RNCC. Hill requests an emergency transfer to a lower security level facility. (*Id.*) In the fourth motion, Hill states that he has been transferred to Red Onion State

Prison. Hill claims that his legal paperwork has been stolen by other inmates and requests an order directing prison officials to retrieve the paperwork. (Dkt. No. 60.)

Hill has not established any of the elements required for the entry of a preliminary injunction. Moreover, Hill's complaint involves his treatment at GRCC, but his motions for injunctive relief complain about conditions at other facilities. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *7 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Accordingly, Hill's motions for injunctive relief will be denied.

## III. CONCLUSION

The court will issue an appropriate order granting Hairston's motion for summary judgment, denying Hill's motions for preliminary injunctive relief, and dismissing this case in its entirety.

Entered: August 28, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge